**IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

In re

TERRY L. YEARY
dba FLAT FORK SELLERS

Debtor

Case No. 3:21-bk-30847-SHB
Chapter 7

**MEMORANDUM ON MOTION BY DEBTOR TO ABANDON AND/OR FOR DETERMINATION SBA GRANT FUNDS ARE NOT PROPERTY OF THE ESTATE**

**APPEARANCES:** LAW OFFICES OF MAYER & NEWTON
John P. Newton, Jr., Esq.
1111 Northshore Drive
Suite S-570
Knoxville, Tennessee 37919
Attorneys for Debtor

MOSTOLLER, STULBERG, WHITFIELD & ALLEN
Ann Mostoller, Esq.
136 South Illinois Avenue
Suite 104
Oak Ridge, Tennessee 37830
Attorneys for Ann Mostoller, Chapter 7 Trustee

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the Court on the Motion by Debtor to Abandon and/or for Determination SBA Grant Funds are Not Property of the Estate ("Motion") filed on June 17, 2021 [Doc. 14], asking the Court to determine that funds received postpetition from the Small Business Administration (the "SBA") under its "Targeted EIDL Advance" and "Supplemental Targeted Advance" programs are not property of the bankruptcy estate or, in the alternative, to direct abandonment of the funds. Ann Mostoller, Chapter 7 Trustee (the "Trustee"), filed a response on July 2, 2021 [Doc. 19], asking that the matter be set for hearing. After the hearing held September 2, 2021, at which the parties agreed that there are no factual disputes, the Court entered an Order on September 3, 2021 [Doc. 35], setting a briefing schedule.

The record before the Court consists of the Joint Stipulations of Facts Solely for Purposes of the Motion to Compel Abandonment or an Order That Property is Not Property of the Estate ("Joint Stipulations") filed by the parties on September 17, 2021 [Doc. 38], including thirteen stipulated facts[1] and three stipulated, collective exhibits:

A. (1) a letter dated April 26, 2020, from the SBA to Debtor denying his application for an Economic Injury Disaster Loan ("EIDL"); (2) an email dated May 3, 2020, from the SBA to Debtor indicating that his EIDL application was being processed; and (3) an email dated May 21, 2020, from the SBA to Debtor referencing an attached letter [Doc. 38-1];

B. (1) an email dated March 21, 2021, from the SBA to Debtor inviting him to submit an application for "COVID-19 Targeted EIDL Advance" of up to $10,000; (2) an email dated May 9, 2021, from the SBA to Debtor with the subject line "SBA Application No.

[1] The parties stipulated in paragraph 10 of the Joint Stipulations that "Debtor listed the 'SBA' as a creditor in his case"; however, by its own independent review of the statements and schedules filed by Debtor, the Court can find no listing for the SBA in Debtor's Schedules A/B, D, or E/F, nor did Debtor include the SBA in his list of creditors required by 11 U.S.C. § 521(a)(1)(A). [*See* Doc. 1 at pp. 20-26, 29-47, 64.] The only reference to the SBA or Small Business Administration is in response to question 28 on the Statement of Financial Affairs concerning the provision of a business financial statement within two years of filing of the case. [*Id.* at p. 16.]

3301742862 – Submitted Confirmation" that invites Debtor to create his EIDL portal account as the next step in his application; (3) an email dated May 21, 2021, from the SBA to Debtor inviting him to request a Supplemental Targeted Advance for a supplemental payment of $5,000.00; (4) an email dated May 22, 2021, from the SBA to Debtor informing him that his "Targeted EIDL Advance" is approved and that such payment "does not need to be repaid"; (5) an email dated May 25, 2021, from the SBA to Debtor informing him that his "Supplemental Targeted Advance" is approved and that such payment "does not need to be repaid"; and (6) a copy of a bank record showing deposits of $10,000.00 on May 24, 2021 (the "Targeted EIDL Advance Funds") and $5,000.00 on May 26, 2021 (the "Supplemental Targeted Advance Funds") [Doc. 38-2]; and

C. a printout of the Targeted and Supplemental Advance Frequently Asked Questions ("FAQs") promulgated by the SBA as April 27, 2021 [Doc. 38-3].

The Court also takes judicial notice, pursuant to Federal Rule of Evidence 201, of documents of record filed in Debtor's bankruptcy case. Debtor filed his brief on September 17, 2021 [Doc. 39], and the Trustee filed her brief on October 15, 2021 [Doc. 41]. This memorandum constitutes the Court's conclusions of law on stipulated facts. *See* Fed. R. Bankr. P. 7052, 9014(c).

## I. THE SBA PROGRAMS AT ISSUE

An understanding of the SBA programs at issue provides the necessary context window for the stipulated facts before the Court.

### <u>EIDL</u>

EIDL is the acronym for the SBA's Economic Injury Disaster Loan program authorized by 15 U.S.C. § 636(b), which program existed before the COVID-19 pandemic but was expanded by the CARES Act of 2020, Pub. L. No. 116-136, to authorize low-interest, fixed-rate,

long-term, direct SBA loans to "help overcome the effects of the pandemic by providing working capital to meet operating expenses." *See* SBA, COVID EIDL Loans Information as of September 8, 2021, at p. 1, available at https://www.sba.gov/document/support-faq-regarding-covid-19-eidl. Such loans had to be repaid, and proceeds were required to be used to make regular payments for operating expenses and to pay business debts incurred at any time. *See id.*

**Targeted EIDL Advance**

The statutory provisions governing the "Targeted EIDL advance for small business continuity, adaptation, and resiliency" are found at 15 U.S.C. § 9009b (the "Targeted EIDL Advance Program"). The "Section was enacted as part of the Economic Aid to Hard-Hit Businesses, Nonprofits, and Venues Act, and not as part of the [CARES Act]." 15 U.S.C. § 9009b, hist. n.; *see* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 332, 134 Stat. 2045. Effective on December 27, 2020, subsection (b) to § 9009b (which is entitled "*Entitlement* to full amount") provides that "a covered entity, after submitting a request to the [SBA] Administrator that the Administrator verifies under subsection (c), *shall* receive a total of $10,000 under section 9009(e) of this title . . . ." 15 U.S.C. § 9009b(b)(1) (emphases added).

Although it references the SBA's disaster *loan* program, the Targeted EIDL Advance Program actually is a *grant* program for those entities that were eligible to apply – and in fact applied – for a SBA disaster loan under 11 U.S.C. § 636(b)(2) before December 27, 2020. *See* 15 U.S.C. § 9009b(a)(2)(A)(i). To qualify for the Targeted EIDL Advance Program, an entity also (1) had to be located in a low-income community, (2) had to have suffered an economic loss of greater than 30 percent (as measured by comparing gross receipts over an eight-week period before and after the COVID-19 disaster period that began on March 2, 2020 (*see* 15 U.S.C. § 9009b(A)(4)(A))), and (3) had to employ no more than 300 employees. 15 U.S.C. § 9009b(a)(2).

Under the express statutory provision, if an entity qualified, the SBA was required to provide the payment under Targeted EIDL Advance Program.

**Supplemental Targeted Advance**

On April 22, 2021, the SBA announced a new round of EIDL assistance called Supplemental Targeted Advance as part of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5002, 135 Stat. 4, 85. *See* Press Release No. 21-32, Small Bus. Admin., SBA Launches Supplemental Targeted Advance for Small Businesses Hardest Hit by COVID-19 (Apr. 23, 2021), available at https://www.sba.gov/article/2021/apr/23/sba-launches-supplemental-targeted-advance-small-businesses-hardest-hit-covid-19. In addition to the requirement of the Targeted EIDL Advance Program that the entity must be located in a low-income community, to be eligible to receive the Supplemental Targeted Advance, the entity also had to have suffered an economic loss of greater than 50 percent during the applicable period and must have had ten or fewer employees. [*See* Doc. 38-2 at p. 7; Doc. 38-3 at p. 2.]

The Targeted EIDL Advance Program and the Supplemental Targeted Advance Program are described by the SBA on its website for Funding Programs:

> Applicants for the COVID-19 Economic Injury Disaster Loan (EIDL) may be eligible to receive up to $15,000 in funding from SBA that does not need to be repaid. These "advances" are similar to a grant, but without the typical requirements that come with a U.S. government grant.
>
> To receive an advance, you must first apply for a COVID-19 EIDL. You do not need to accept the loan or be approved for the loan to receive an advance. Once you apply for the loan, SBA will invite you via email to apply for one of the advance programs if your business is located in a low-income area . . . .

SBA, Targeted EIDL Advance and Supplemental Targeted Advance, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/eidl/targeted-eidl-advance-supplemental-targeted-advance (last visited Dec. 29, 2021).

Finally, as described in the FAQs, "Targeted EIDL Advance and Supplemental Targeted Advance funds can be used for working capital and normal operating expenses that could have been met had the disaster not occurred. Those include (but aren't limited to) continuation of health care benefits, rent, utilities and fixed-debt payments." [Doc. 38-3 at pp. 8-9.]

**II. STIPULATED FACTS**

Debtor filed the Voluntary Petition commencing this Chapter 7 bankruptcy case on May 13, 2021, and the Trustee was appointed as substitute trustee on May 18, 2021. [Doc. 38 at ¶¶ 1-2.] Both prepetition and postpetition, Debtor has operated Flat Fork Sellers, a sole proprietorship through which he sells used furniture. [*Id*. at ¶ 1.]

In 2020, Debtor applied to the SBA for an EIDL, but his loan application, identified by the SBA as "Disaster Loan Application Number 3301742862," was denied by a letter dated April 26, 2020, because of Debtor's "unsatisfactory credit history." [*Id*. at ¶ 3; Doc. 38-1 at p. 2.] Some eleven months later, on March 21, 2021, Debtor received an email from the SBA entitled "SBA Application No. 3301742862 – Invitation to submit COVID-19 Targeted EIDL Advance application" that included a hyperlink for the "Targeted Advance Application" and stated, in material part:

> The SBA is launching a new round of Economic Injury Disaster Loan (EIDL) Advances – called Targeted EIDL Advance – which provides eligible businesses with $10,000 in total grant assistance. If you received the EIDL Advance last year in an amount less than $10,000, you may be eligible to receive the difference up to the full $10,000. The combined amount of the Targeted EIDL Advance and any previously received Advance will not exceed $10,000.
>
> Please review the eligibility criteria and application instructions below carefully before you proceed to the application portal for the Targeted EIDL Advance.
>
> . . . .
>
> The SBA's goal is to process all requests within 21 days of receiving a completed application. All application decisions will be communicated via email. Due to

> limited available funds for the Targeted EIDL Advance program, the SBA wll not be able to reconsider applications through an appeal process, so please make sure that your information is correct when you submit your application.
>
> If your request is approved, you will receive an email notification and an ACH deposit to the bank account you provided in your application.

[Doc. 38-2 at pp. 2-3.] The hyperlink to the "Targeted Advance Application" was active for only thirty days from March 21, 2021 – i.e., until April 20, 2021. [Doc. 38-2 at p. 4.]

On May 9, 2021 (i.e., four days before Debtor filed his Chapter 7 petition), Debtor received an email entitled "SBA Application No. 3301742862 – Submitted Confirmation" that included a link and the following notifications:

> Create your SBA Economic Injury Disaster Loan Portal Account
>
> Your SBA Application No. 3301742862 is ready for the next step. Create your SBA Economic Injury Disaster Loan Portal account to provide additional details or requested documents.

[*Id*. at p. 5.] Given the title of the email (i.e., "Submitted Confirmation") and the deadline of April 20, 2021, for the application link contained in the March 21 email, the Court infers that Debtor had submitted his request for the Targeted EIDL Advance by April 20 or at least by May 9 when his application submission was confirmed.

On May 21, 2021, Debtor received an email from the SBA entitled "SBA Application No. 3301742862 – Invitation to request Supplemental Targeted Advance," which stated, in material part:

> INVITATION TO REQUEST SUPPLEMENTAL TARGETED ADVANCE
> Application #3301742862
>
> . . . .
>
> The SBA is launching a new round of Economic Injury Disaster Loan (EIDL) Advances – called Supplemental Targeted Advance – which provides the smallest and hardest hit eligible businesses with a supplemental payment of $5,000. According to our records, you submitted your application for the Targeted EIDL

> Advance and may be eligible to also receive the Supplemental Targeted Advance. Even if you have previously received the EIDL Advance in the full amount of $10,000, you may be eligible for the Supplemental Targeted Advance if you meet eligibility criteria. The combined amount of the Supplemental Targete Advance ($5,000) with any previously received EIDL Advance or Targeted EIDL Advance ($10,000) will not exceed $15,000.
>
> . . . .
>
> All application decisions will be communicated via email. If your request is approved, you will receive an email notification and an ACH deposit to the bank account you provided in your application for the Targeted EIDL Advance.

[*Id*. at p. 7.]

The day after Debtor received SBA's invitation to request a Supplemental Targeted Advance, Debtor received an email entitled "SBA Application No. 3301742862 – Approved," informing him that his request for the Targeted EIDL Advance had been approved:

> Your Targeted EIDL Advance Application No. 3301742862 has been approved in the amount of $10,000.00. SBA will make an ACH deposit to the bank account you provided in your application. As a reminder, the Targeted EIDL Advance does not need to be repaid.

[*Id*. at p. 8.] Two days later, on May 24, 2021, the SBA deposited into Debtor's bank account the Targeted EIDL Advance Funds. [*Id.* at p. 10.]

The next day, on May 25, 2021, Debtor received an email from SBA also entitled "SBA Application No. 3301742862 – Approved," which informed him that his request for a Supplemental Targeted Advance of $5,000.00 had been approved:

> Your Supplemental Targeted Advance Application No. 3301742862 has been approved in the amount of $5,000.00. SBA will make an ACH deposit to the bank account you provided in your application. As a reminder, the Supplemental Targeted Advance does not need to be repaid.

[*Id*. at p. 9.] The next day, on May 26, the SBA deposited into Debtor's bank account the Supplemental Targeted Advance Funds.

Thus, Debtor applied for the Targeted EIDL Advance before filing for Chapter 7

protection, and the approval of his request for the Targeted EIDL Advance and the deposit of the Targeted EIDL Advance Funds into Debtor's account occurred postpetition. All of the events surrounding the Supplemental Targeted Advance – the SBA's invitation, Debtor's request, the SBA's approval of Debtor's request, and the deposit of the Supplemental Targeted Advance Funds – occurred postpetition.

## III. ANALYSIS

Debtor argues that because his request for a Targeted EIDL Advance was pending and not approved prepetition and because the entire Supplemental Targeted Advance process occurred postpetition, none of the $15,000.00 received from the SBA is property of his bankrupty estate. He also argues that because the funds received from the SBA were to be used for business purposes, any other use might put him at risk for a repayment demand by the SBA.

On the other side, the Trustee argues that because both the Targeted EIDL Advance and Supplemental Targeted Advance invitations, requests, and approvals are based on the same loan application number as the EIDL application denied in 2020, both grants were contingent interests of the Debtor and are, therefore, property of the estate. In the alternative, she argues that Debtor received the application portal link prepetition on May 9, 2021, so that the Targeted EIDL Advance was approved prepetition, and at a minimum, those funds are property of the estate. Finally, she argues that there is nothing in the record to reflect a requirement that the funds be used strictly for business purposes or that Debtor could be at any risk that the SBA would demand repayment otherwise.

Based on the record before it, the Court finds that the Targeted EIDL Advance Funds are property of the estate but only to the extent that they may be used to pay business debt and that the Supplemental Targeted Advance Funds are not property of Debtor's bankruptcy estate.

**Property of the Estate**

Under 11 U.S.C. § 541(a)(1), Debtor's bankruptcy estate, including all property and property interests he held as of the commencement of the case, was created when he filed his bankruptcy case on May 13, 2021. The scope of "property of the estate" under § 541(a) is broad so that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Church Joint Venture, LP v. Blasingame (In re Blasingame)*, 986 F.3d 633, 638 (6th Cir. 2021) ((citations omitted)). Property of the estate includes any asset to which Debtor was entitled based on a prepetition property interest, even if the funds were received postpetition. 11 U.S.C. § 541(a)(6).

Because the Bankruptcy Code does not define "property of the estate," state law governs what constitutes a property interest and when it is acquired unless "some federal interest requires a different result." *Butner v. United States*, 440 U.S. 48, 55 (1979). The Supreme Court has "strongly suggested federal property interests are related to a party's right to control the property." *United States v Goddard*, 735 F.Supp.2d 820, 827 (E.D. Tenn. 2010) (citing *Drye v. United States*, 528 U.S. 49, 61 (1999) ("[I]n determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" (citations omitted)). "The real question here is whether the Debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property." *McLemore v. Third Nat'l Bank (In re Montgomery)*, 983 F.2d 1389, 1395 (6th Cir. 1993) (quoting *Matter of Smith*, 966 F.2d 1527, 1531 (7th Cir. 1992)).

Although the property at issue here resulted from two grants, not loans, in the context of a loan, the Sixth Circuit Bankruptcy Appellate Panel found that the question turns on whether the

debtor contractually became entitled to the funds prepetition, even if the funds are received postpetition:

> While it is true that a debtor's potential credit (i.e., an offer of credit) is not an equitable interest that becomes property of the estate, if the debtor accepts the offer prepetition or exercises a contract right to borrow funds from a credit card account, the debtor then has at least an equitable interest in the funds. This is true even if the debtor never receives the funds but only exercises control over the disposition of the funds.

*Meoli v. MBNA Am. Bank (In re Wells)*, 382 B.R. 355, 362 (B.A.P. 6th Cir. 2008).

**The Targeted EIDL Advance Funds**

The express statutory text of § 9009b(b)(1) makes clear that an eligible entity, which Debtor was, was entitled to the grant funds under the Targeted EIDL Advance Program on request by the entity: "[A] covered entity, after submitting a request to the Administrator that the Administrator verifies under subsection (c), *shall receive* a total of $10,000.00 under section 9009(e) of this title . . . ." 15 U.S.C. § 9009b(b)(1). Indeed, subsection (b) bears the title "Entitlement to full amount." *Id.* Once Debtor submitted his request, which occurred prepetition, he was entitled to receive the Targeted EIDL Advance Funds in the sum of $10,000.00. Thus, under applicable federal law, Debtor was entitled to the funds prepetition.

Debtor argues that the Court should review the specific purpose for which the grant was given, citing to *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233 (3d Cir. 2001). [Doc. 39 at p. 3.] That case concerned a grant from the United States Department of Housing and Urban Development, which the court of appeals held was not property of the Chapter 11 bankruptcy estate because of the government's strong supervisory interest in safeguarding the effective administration of the program funds. *Id.* at 243-44.

Notably, the *Walsh* court expressly recognized: "To be sure, if a provision of a federal grant program specifically authorizes federal grant moneys to be used to pay a debtor grantee's

creditors, it will be difficult for us to conclude that the federal agency's interest is sufficiently weighty to exclude the debtor's interest from § 541's property definition." *Id.* at 244. Here, the Targeted EIDL Advance Funds could be used "for working capital and normal operating expenses that could have been met had the [COVID-19] disaster not occurred." [Doc. 38-3 at pp. 8-9.] Thus, authorized use was limited to business expenses of the eligible entity but otherwise was very broad. The record does not include, nor could the Court find statutory or regulatory provisions, that point to any potential for an audit by the SBA over Debtor's use of the Targeted EIDL Advance Funds. Nonetheless, the Court does not find the lack of an audit risk to be a ground to authorize use of the funds in contravention of the program purposes.

Thus, the Court finds that Debtor's entitlement to the Targeted EIDL Advance Funds existed prepetition but that the Chapter 7 Trustee may use such funds only to pay Debtor's business debts that were incurred after March 2, 2020 (which is the date designated by § 9009b(a)(4) for the economic loss that made Debtor eligible for the Targeted EIDL Advance Program). Any excess funds must be returned to Debtor for his use as authorized by the Targeted EIDL Advance Program.

**Supplemental Targeted Advance**

Based on the record, the Court finds that the Supplemental Targeted Advance Funds are not property of the bankruptcy estate. The record reflects that Debtor did not become eligible for the Supplemental Targeted Advance until he was invited to apply by "return[ing] to the Targeted Advance Application portal by clicking on the link [in the May 21, 2021 invitation email] and check[ing] "Yes" to confirm that [he] would like to be considered for a Supplemental Targeted Advance of $5,000." [Doc. 38-2 at p. 7.] Thus, Debtor was not entitled to the Supplemental Targeted Advance Funds prepetition, and they are not property of the bankruptcy estate.

## IV. CONCLUSION

Because the Court finds that the Targeted EIDL Advance Funds totaling $10,000.00 are property of the bankruptcy estate subject to use by the Chapter 7 Trustee as required by the Targeted EIDL Advance Program, with any excess portion of such funds to be abandoned by the Trustee to Debtor, the Motion will be denied in part as to those funds. Because the Court finds that the Supplemental Targeted Advance Funds are not property of the bankruptcy estate, Debtor's Motion will be granted in part as to those funds. A separate order consistent with this Memorandum will enter.

FILED: January 12, 2022

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE